UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BONNIE HARGIS,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀vs.⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀Case No. 4:09CV604 CDP
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
ACCESS CAPITAL FUNDING,⠀⠀)
LLC, et al.⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Defendants.⠀⠀⠀⠀)

## MEMORANDUM AND ORDER

Plaintiff Bonnie Hargis claims that defendants (a lender and a mortgage broker) engaged in the unauthorized practice of law when they charged her certain fees as part of the refinancing of her home mortgage. She seeks to represent a class of similarly-situated persons. After defendants pointed to undisputed facts showing that Hargis was not charged and did not pay the alleged fees, she twice sought to amend her complaint. None of the proposed amendments cures the essential problem: Hargis cannot show that she paid the fees she alleges, so she lacks standing to sue for unauthorized practice of law and she was not damaged by the alleged wrongful conduct. I will grant summary judgment to both defendants, and will deny the motions to amend, as allowing the amendments would be futile.

## Undisputed Facts

In December of 2007, Bonnie Hargis obtained a loan from defendant Webster Bank, N.A., to refinance her home. Defendant Access Capital Funding, LLC, brokered the loan. Webster lent plaintiff a principal amount of $170,672. This was an FHA, 30-year fixed loan at 6.75% interest. Before the refinancing, Hargis had both a first and second mortgage, with a blended (and adjustable) interest rate of 8.125%.

Plaintiff brought $2500 in cash to the closing; her cash was combined with the loan proceeds from Webster and held in one trust account by the closing agent, who then disbursed the funds. The Final Settlement Statement (HUD-1) signed by plaintiff at closing showed that the funds (totaling $173,172) were disbursed as follows: $131,278.20 to First Franklin (paying off plaintiff's pre-existing first mortgage loan); $33,337.03 to First Franklin (paying off plaintiff's pre-existing second mortgage loan); $5356.19 in settlement charges (charged to plaintiff); $1126.42 for real estate taxes; and $2074.16 to Providian (paying off plaintiff's credit card balance). The $5356.19 in settlement charges to plaintiff broke down as follows: $2522.25 for mortgage insurance; $1006 for hazard insurance; $251.63 for Jefferson County real estate taxes; and $1660 to Citi Financial to pay off

another credit card.[1]  The loan proceeds plus plaintiff's $2500 thus paid off her first and second mortgages (totaling almost $165,000), paid off two credit cards, and paid the taxes and insurance for that year.

The HUD-1 also lists "Items payable in connection with loan." These amounts were all paid either by Webster or by Access; they were not deducted from the loan proceeds at closing.  They include the two fees that plaintiff now claims were improper fees for legal services charged by non-lawyers.  Line 811 states:  "Processing Fee to Access Capital Funding POCM $200."  Line 813 states: "Admin Fee to Webster Bank, National Association POCM $450."  "POCM" means that the fees were paid outside of closing by the mortgage broker (Access). This section of the HUD-1 also shows the compensation Access received for brokering the loan, which is shown as "Yield Spread Premium to Access Capital Funding POCL $5333.50."  "POCL" means the fees were paid outside of closing by the lender (Webster).

The Yield Spread Premium (YSP) is the compensation Webster paid to Access for brokering the loan.  The undisputed evidence shows that Access, acting as a mortgage broker, arranged the loan with Webster.  Obtaining a new loan for Hargis was difficult because she had a low credit score and unfavorable loan to

_____

[1]There was also an adjustment credit from Webster Bank in the amount of $83.69.

value and debt to income ratios. Webster did not have a retail operation in Missouri at the relevant time and so could not have offered the loan directly to Hargis. Access obtained an appraisal for the home in the amount of $177,000. At closing, the net amount Webster paid Access was $3740.73, because the closing agent deducted the amounts that Access was obligated to pay as part of its services as a mortgage broker.[2] The $450 "Admin Fee" payable to Webster was deducted from the amount Access received from Webster. The $200 "Processing Fee" shown as payable to Access was not deducted; instead of paying $200 to itself, Access waived the fee.

Webster Bank later sold plaintiff's loan to Countrywide Home Loans, Inc., but that sale had no effect on the amount plaintiff owed on the loan, on the interest rate she was obligated to pay, or on anything else that might be material to this litigation.

## Procedural History

Plaintiff initially filed suit in state court, and defendant removed under the provisions of the Class Action Fairness Act. The complaint currently pending is

---

[2]Amounts included in these deductions, but not challenged in this lawsuit, included the appraisal fee, the flood certificate fee, certain accrued interest, some unpaid property taxes and insurance, the closing agent fee and the Fannie Mae Underwriting Fee. These are all listed on the closing statement as "POCM."

plaintiff's First Amended Class Action Complaint.[3]  It seeks recovery under

theories that both defendants engaged in the unauthorized practice of law under

Mo. Rev. Stat. § 484.010 and § 484.020 (Counts I and V), that defendants violated

the Missouri Merchandising and Practices Act, Mo. Rev. Stat. § 407.010 et seq.

(Counts II and VI), that defendants were unjustly enriched (Counts III and VII),

and that both were negligent (Counts IV and VIII).

    After defendants moved for summary judgment and pointed out that,

contrary to plaintiff's arguments in her briefs, she had not pleaded certain claims,

plaintiff filed a motion for leave to amend.  Her proposed Second Amended Class

Action Complaint dropped the negligence and unjust enrichment claims and added

claims for "Money Had and Received."  This proposed complaint broadens the

factual allegations from merely claiming that the "Admin Fee" and "Processing

Fee" were charges for the unauthorized practice of law, to include additional

claims that charging any fee for closing services constituted the unauthorized

practice of law.  The proposed complaint's factual section also alleges that the sale

to Countrywide was somehow wrongful, but none of the actual counts say this.

The Money Had and Received counts allege that the charging of any yield spread

---

[3]At the initial scheduling conference, I pointed out that the originally filed state-court petition lacked a clear definition of the class or classes plaintiff sought to represent, and so I set a deadline for filing an amended complaint.

premium at all violated the anti-kickback provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2607(a) because it was not reasonably related to the services performed. Although plaintiff did not actually make a RESPA claim (presumably because the one-year statute of limitations had expired), she based the Money Had and Received claim on the alleged RESPA violation. Despite this extreme broadening of the claims to include much more than the original claims about the $200 "Processing Fee" and the $450 "Admin Fee" being paid for the unauthorized practice of law, plaintiff's motion to amend stated that the amendment did not change or add claims and was simply to "conform to the evidence."

Plaintiff also filed an "Alternative Motion for Continuance," asking to be allowed to conduct additional discovery into "whether Plaintiff's increased payments of interest compensated Webster Bank and Countrywide for the yield spread premium that was paid to Defendants for closing services."

When defendants pointed out, in response to plaintiff's proposed Second Amended Class Action Complaint, that a claim for Money had and Received could not be based on a time-barred RESPA claim, plaintiff then filed a "Motion to Substitute," attaching a different proposed Second Amended Class Action Complaint. The second "Second Amended" complaint removed the claims about

RESPA, but then alleges all the same conduct as the basis for the Money Had and Received claims. Instead of alleging that the conduct violated RESPA, she alleges that it was a misrepresentation, that it violated a criminal statute (18 U.S.C. § 1001), and that it was negligent.

## Discussion

In ruling on summary judgment, the Court views the facts and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden to establish the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but must set forth by affidavit or other evidence specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2).

A party may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in its favor. *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir.1995). "The mere existence of a scintilla of evidence in support of the

[party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. 242 at 252; *Davidson & Associates v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005). Under Rule 56(f), Fed. R. Civ. P., when a party shows that for specified reasons it cannot present facts essential to justify its opposition, the court may, among other things, allow a continuance to enable discovery to be undertaken.

Defendants urge that all of plaintiffs claims fail because she lacks standing to bring the claims, arguing that plaintiff cannot complain of actions that did not injure her. Article III of the United States Constitution limits courts to hearing actual cases and controversies. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992). To have standing, a plaintiff must allege and eventually prove she has suffered an injury-in-fact traceable to a defendant's challenged action and that the injury would be redressed by a decision in her favor. *Lujan*, 504 U.S. at 560-61; *Curtis Lumber Co., Inc. v. Louisiana Pacific Corp.*, Nos. 09-2602, 09-2692, 2010 WL 3307371 at * 3-4 (8th Cir. August 24, 2010). Defendants' argument on standing is that if the undisputed facts show that someone other than plaintiff paid the fees, she cannot complain about their being charged. *Cf. Bykov v. Radisson Hotels Int'l, Inc.*, 221 Fed. Appx. 490, 492 (8th Cir. 2007) (plaintiff lacks standing to challenge fees paid by her employer). Defendants also argue that

each claim fails because plaintiff cannot prove that she was damaged, which is a necessary element of each claim.

### 1.     Plaintiff's Claims and Theories

Plaintiff's complaint, and parts of her two proposed "Second" amended complaints, are based on her claim that defendants unlawfully charged her the $200 "Processing Fee" and the $450 "Admin Fee" listed on the HUD-1 in connection with her loan.  As explained more fully in the next section of this opinion, the undisputed facts show that plaintiff did not pay these fees.  They were paid by Access, not plaintiff.

In her briefs plaintiff alternatively argues that even though the documents show she did not pay these amounts, she should still recover because defendants paid them using her money.  Her arguments that defendants were actually using her money is two-fold.  First she argues that the funds were all commingled and that a "transmutation" occurred.  Then she argues that if the fees were deducted from the Yield Spread Premium, that was really a payment from her, because the YSP must have been funded by charging her a higher interest rate.  I will discuss these arguments below, but here will summarize the various causes of action that she asserts and set out the legal theories for the claims.

The "unauthorized practice of law" claim is based on a Missouri statute that

provides that non-lawyers who engage in the unauthorized practice of law are subject to suits for the amounts paid (and statutory penalties) for such services within two years of payment of those fees. Mo. Rev. Stat. § 484.020.2 (2000). The Missouri Supreme Court has held that when a bank charges a borrower for preparation of legal documents involved in financing a real estate transaction, the bank has engaged in the unauthorized practice of law and is subject to suit under the statute. *Eisel v. Midwest BankCentre*, 230 S.W.3d 335 (Mo. banc 2007).

Additionally, the Missouri Supreme Court has recognized that even after the two year period for filing a statutory action has passed, a plaintiff may bring a common-law claim for "Money Had and Received" to recover fees paid to a lender for preparation of legal documents or other unauthorized practice of law. *Carpenter v. Countrywide Home Loans, Inc.,* 250 S.W.3d 697, 703 (Mo. banc 2008). The court's extension of the common-law doctrine as recognized in *Carpenter* assumes, of course, that the plaintiff actually paid the fees for actions that constitute the unauthorized practice of law. Plaintiff's theory here is that even if the disputed fees were paid outside of closing, she should be entitled to this remedy so long as it was her money that the defendants were using to pay one another for the fees.

Plaintiff's claims under the Missouri Merchandising Practices Act, Mo.

Rev. Stat. § 407.010 *et seq*., allege that defendants' charging these fees was a deceptive practice that caused her to suffer financial injuries. A plaintiff must suffer an ascertainable loss to bring a claim under the MMPA. *Freeman Health System v. Wass*, 124 S.W.3d 504, 507-08 (Mo. Ct. App. 2004). Her unjust enrichment claim alleges that these acts gave defendants "monies which in equity and good conscience out to be paid to" her. To recover for unjust enrichment, a plaintiff must show, among other things, that she conferred a benefit on a defendant. *Bauer Dev. LLC v. BOK Fin. Corp.*, 290 S.W.3d 96, 100 (Mo. Ct. App. 2009). Her negligence claim alleges that defendants breached "a duty to exercise due care in drafting, preparing and procuring the subject sales documents, and a duty to only charge fees that were allowable by law." Negligence, of course, requires that plaintiff be damaged by the negligent conduct. *See Bray v. Brooks*, 41 S.W.3d 7, 15 (Mo. Ct. App. 2001).

As discussed above, plaintiff's first proposed Second Amended Class Action Complaint alleges, in addition to the unauthorized practice of law claims, an allegation that the "Admin Fee" and the "Processing Fee" violated RESPA. It also broadens the allegations to claim that the Yield Spread Premium itself violated RESPA. As discussed in more detail below, some courts have recognized the viability of similar theories. After defendant pointed out that no claim for

"Money Had and Received" could be based on a time-barred RESPA claim, plaintiff proposed her second "Second Amended" complaint in the "Motion to Substitute." This complaint again generally alleges that charging the YSP was somehow independently wrongful and therefore a basis for a Money Had and Received Claim. Her reference to the criminal statute, 18 U.S.C. § 1001 simply makes no sense, and she provides no facts in support of that allegation.

As stated above, the undisputed evidence shows that plaintiff did not directly pay the "Admin Fee" or the "Processing Fee," and so defendants are entitled to summary judgment to the extent her claim alleges otherwise. The arguments that she somehow indirectly paid the fees is more complicated.

## 2. Commingling and Transmutation

It is undisputed that the loan proceeds from Webster and plaintiff's money were deposited into the same trust account.[4] Plaintiff argues that when the closing agent deposited her $2500 into the same trust account as the loan proceeds from Webster, this was commingling that resulted in transmutation. And, according to plaintiff, as a result of that transmutation, the money could no longer be separated

_____

[4]In fact, the amount Webster actually wired to the closing agent exceeded the principal loan amount, but this discrepancy is not material to the issues in this suit. The amount of the loan, the amount plaintiff brought to the closing, and the amounts paid out, as shown on the HUD-1 and listed above, are all undisputed facts.

and the amount of the contributions could not be ascertained. Plaintiff then argues

that when the disputed fees were paid from the trust account, they were paid with

money she jointly owned with defendants, giving her standing. I disagree.

Transmutation is a family law concept. Under Missouri law, property

acquired before marriage is nonmarital property, but property acquired after

marriage and before a decree of legal separation or dissolution is marital property.

*In re Marriage of Looney*, 286 S.W.3d 832, 837 (Mo. Ct. App. 2009).

Transmutation occurs when an item of nonmarital property is converted into

marital property. *Id*. However, "[p]roperty which would otherwise be nonmarital

property shall not become marital property solely because it may have been

commingled with marital property." *Id*. (quoting Mo. Rev. State § 452.330.4).

Plaintiff cited to *In re Marriage of Thomas*, 199 S.W. 3d 847 (Mo. Ct. App. 2006),

in support of her transmutation argument. It holds, however, that the owner's

intent to convert the property to marital property is the determining factor. *Id.* at

863.

These family law cases have nothing to do with this case. Obviously, the

parties are not married. Even if these family law concepts somehow extended to

real estate or trust law, the parties' intent would be the determining factor.

Nothing in the facts of this case suggests that Webster or Access intended to

jointly own with plaintiff the money used to pay the disputed fees. To the contrary, the HUD-1 Statement shows that the disputed fees were paid outside of closing by the lender and the mortgage broker.

Plaintiff argues that no "tracing mechanism" is applicable to the allegedly commingled funds. Plaintiff relies on a case about partnership accounting that states, "when a person who holds property in a fiduciary capacity mixed his own property with it so that it cannot be separated nor the amount of each ascertained, the whole becomes, both at law and in equity, the property of the trust estate." *Alexander v. Glasgow*, 270 S.W.2d 161, 163 (Mo. Ct. App. 1954). Here, of course, the amounts contributed and disbursed can clearly be traced. Plaintiff admits at numerous places in the record that she contributed $2500 at closing; she admits that the principal amount of her loan, contributed by Webster, was $170,620. The HUD-1 Statement shows exactly what happened to all of these funds – they were fully consumed in paying off the previous loans, paying off plaintiff's credit cards, and paying the settlement charges listed above. The undisputed evidence shows that no part of the $170,620 loan proceeds or the $2500 contributed by plaintiff was used to pay the disputed fees. The undisputed facts show that plaintiff did not pay the fees of which she complains. Therefore, she lacks standing to bring any of her claims, and she cannot prove that she was

damaged. This should end the case, but plaintiff's argument that she paid indirectly because defendants used her own money to pay each other must be considered.

### 3.    Higher Interest Rate Argument

As an alternative argument, plaintiff claims that even if fees were paid by Access through a deduction from what it was owed on the Yield Spread Premium, and even if the YSP was money paid by Webster to Access, she ultimately paid the YSP through increased interest payments. The undisputed facts show that Access was compensated for its mortgage brokerage services by Webster's payment of the YSP. From that money it earned for its services, Access paid certain expenses, including the disputed $450 "Admin Fee" to Webster. Access did not actually pay itself the disputed $200 "Processing Fee" – its witnesses testified that it actually waived the fee rather than paying itself $200. Plaintiff's argument is that she nevertheless can bring this suit because, she says, Access made these payments with plaintiff's own money. She reasons that Webster must have charged her a higher interest rate than it would have if the "Processing Fee" and "Admin Fee" had not existed. Thus, she argues, when Webster paid Access the YSP it used plaintiff's money, and when Access paid Webster the $450 it also used plaintiff's money. This argument is not framed by the current pleadings and is not supported

by the evidence, and plaintiff's briefs repeatedly mischaracterize the record.

In the two versions of the proposed Second Amended Class Action Complaints, plaintiff goes further than in her initial complaint and briefs, alleging that the charging of the Yield Spread Premium itself was wrongful, even apart from any unauthorized practice of law issues, because it is not related to the services Access performed. This argument is also not supported by the facts or the law.

Payment of fees, including Yield Spread Premiums, to mortgage brokers does not necessarily violate RESPA, so long as the fees paid are a reasonably related to the value of goods, services, or facilities actually provided. *Glover v. Standard Federal Bank*, 283 F.3d 953, 965 (8th Cir. 2002). The undisputed evidence shows that Access performed services for its fee: brought the borrower and lender together, by seeking and finding a lender willing to lend money to plaintiff at a reasonable rate despite her heavy debt and low credit rating; it obtained an appraisal that would support the new loan; it paid costs that Hargis would have been obligated to pay at closing if she had not used a broker; and it obtained an FHA approved loan with a lender who did not have retail services in Missouri. Hargis could not have obtained the loan with Webster without Access's services. I will not allow plaintiff to amend her complaint to broaden it to include

a RESPA claim that is not only time-barred but is also not supported by the facts of this case[5].

Plaintiff argues that "her" "par rate" was 6% and that any interest rate over that amount is an improper "indirect fee." She relies on authorities defining "par rate" in a way different from the way it was used by the parties in this case. *See, e.g., Glover*, 283 F.3d at 957-58. Hargis also cites to the testimony in this case, but she misrepresents what the witnesses actually said. The undisputed testimony of defendant's witness was that the 6% "par rate" was *not* available to Hargis, and would not have been available to her if she had sought the loan without Access's help. Thus, even if in other contexts "par rate" has been defined as plaintiff urges, that is not the way the parties used it here. For example, the witness testified that there was no "par rate" specific to Hargis, and that: "Par rate is not a retail price," and "It's not a price – par rate is truly base pricing. It's not what you offer a loan out of the street on," and "they [customers] could not get 6 percent." There is no evidence that plaintiff could have gotten a rate of 6% under any circumstances. Moreover, despite the arguments in plaintiff's briefs, there is no evidence that

---

[5]Hargis is a plaintiff in another case before this court, *Bonnie Hargis v. U.S.Bancorp, et al.*, Case No. 4:10CV27JCH. In a brief filed there by the same counsel, she conceded that a time-barred RESPA claim cannot be the basis for a cause of action for money had and received. See docket entry # 16 (Plaintiff's motion for leave to amend in that case).

plaintiff paid a higher interest rate at all because of the $450 "Admin Fee."

An argument somewhat similar to plaintiff's argument that she paid a higher interest rate because of the fees has been accepted by at least one court and has some support in the policy statements issued by HUD. In *McWhorter v. Ford Consumer Finance Co., Inc.*, 33 F. Supp. 2d 1059, 1067 (N.D. Ga. 1997), the plaintiff had standing because the undisputed evidence showed that plaintiff was charged 4% more in interest over the life of her loan because of the fee paid to a mortgage broker. In that case, however, the court nevertheless granted summary judgment to the defendant because the evidence showed that the broker provided services for the compensation it earned. *Cf. Carias v. Lenox Financial Mortgage Corp.*, No. 07-0083-SC, 2008 WL 397339 (N.D. Cal. Feb. 8, 2008) (no evidence of any connection between the interest rate and the challenged fee, so summary judgment granted to defendant).

Plaintiff's presently pending complaint does not challenge Access's obtaining compensation for its services; rather, it only challenges, as fees for the unauthorized practice of law, the $450 "Admin Fee" and the $200 "Processing Fee." As discussed above, the undisputed evidence shows that no one paid the $200 "Processing Fee," so she cannot base a claim on that. For her to prevail on her claim that she indirectly paid the $450 "Admin Fee," she would have to prove

that the 6.75% interest rate on her loan was higher than it would have been but for the $450 charge.[6]  Plaintiff has not and cannot prove this.  I have read the entire, lengthy deposition of Webster witness Kathleen Lowry.  Despite the arguments in plaintiff's briefs, the transcript shows that throughout the repeated questioning by plaintiff's counsel attempting to establish that Hargis paid a higher interest rate because of the "Admin Fee" or the YSP, the witness testified that she did not.  The undisputed evidence now before me shows that Webster charged Hargis an interest rate that was the market rate for the loan product she bought: a 30-year, fixed rate, FHA approved, loan in the amount of $170,672.

Plaintiff has presented no evidence, specific to this case, that would create a nexus between the $450 "Admin Fee" and her 6.75% interest rate.  Without such a nexus, she cannot prove that she was injured in any way by the fee.  Defendants are entitled to summary judgment on all of the claims.

## 4.     Motions to Continue and Amend

In her Motion to Continue, plaintiff asserts that further discovery would allow her to find evidence sufficient to survive summary judgment.  It is true that I granted a motion to quash an additional deposition seeking Rule 30(b)(6)

---

[6]Plaintiff's allegation that the entire YSP is what caused the interest rate to be higher is not included in the currently pending complaint.

testimony related to "Webster Bank's charging yield spread premiums with respect to Missouri mortgages." I granted the motion to quash partly because the notice was unreasonable and partly because the discovery sought was not related to the issue in the case: whether plaintiff paid a $450 fee for the unauthorized practice of law. During six hours of questioning of witness Lowry, plaintiff's counsel asked numerous questions about whether the Yield Spread Premium caused plaintiff to pay more than "her" par rate. This issue was not framed by the pleadings, and allowing further deposition questioning on it would not be productive. Moreover, Lowry repeatedly testified that the YSP was not related to the "Admin Fee." The undisputed testimony of Lowry shows that plaintiff's attempt to expand the scope of the case to YSPs generally has no factual basis. Moreover, as discussed above, plaintiff concedes that any RESPA claim is time-barred and that she cannot base a claim for Money Had and Received on a time-barred RESPA claim.

Parties may amend pleadings only with the opposing party's written consent or leave from the court. Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted freely as justice so requires. *Id.*; *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992). However, if the proposed amended complaint would not cure the defects in plaintiff's case, an amendment is futile and the court need not allow it. *Brown*, 957 F.2d at 566; *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519

F.3d 778, 783-84 (8th Cir. 2008).

Here, allowing plaintiff to file either of her two different proposed Second Amended Class Action Complaints would be futile because the new pleadings do not solve the problem plaintiff has. The undisputed facts show she was not charged any fees for legal work performed by non-lawyers. In the absence of evidence to support the very basis of all her claims, she cannot proceed.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's motion for leave to amend, her motion to substitute, and her motion to continue are all DENIED.

**IT IS FURTHER ORDERED** that defendant's motion to strike the affidavit of Judge White is DENIED AS MOOT.

A separate judgment in favor of defendants is entered this same date.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of October, 2010.